Filed 6/10/25  Din v. Sutter Valley Hospital CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| ADNAN DIN, | C099101 |
| Plaintiff and Appellant, | (Super. Ct. No. CV-2020-720) |
| v. | |
| SUTTER VALLEY HOSPITAL et al., | |
| Defendants and Respondents. | |

Plaintiff Adnan Din worked as a general surgeon at defendant Sutter Davis Hospital (Hospital).  In 2019, the Medical Executive Committee (MEC) of the Sutter Davis Hospital Medical Staff (Medical Staff) summarily suspended Din's clinical privileges, and he resigned.  He filed suit against the Hospital, alleging that it had retaliated against him for raising concerns about a variety of patient care issues.  Din later amended his complaint to add the Medical Staff as a defendant.

The trial court sustained a demurrer as to Din's claims against the Medical Staff after concluding they were barred by the applicable statutes of limitation.  It then

1

bifurcated the proceedings against the Hospital to make a preliminary determination as to whether the Hospital could be held liable for actions taken by the Medical Staff. The court limited the evidence Din could present at that initial stage of the trial, in part by excluding an expert witness, and it struck Din's demand for a jury trial. After a bench trial, the court concluded that the Hospital did not control the Medical Staff's decisions and entered judgment in favor of the Hospital.

On appeal, Din asserts that he was entitled to a jury trial, that the trial court should not have bifurcated the proceedings or excluded his expert witness, and that there was insufficient evidence to support the court's defense verdict. As to the Medical Staff, Din argues that the trial court erred when it sustained the demurrer on statute of limitations grounds. We reject his claims and affirm the judgment.

BACKGROUND

Din initially filed suit on June 10, 2020, naming the Hospital as defendant. On January 20, 2022, the Hospital filed a motion for summary judgment or summary adjudication on "the ground that all Plaintiff's causes of action involve alleged action by the Sutter Davis Hospital Medical Staff, which is a distinct legal entity from Sutter Davis Hospital." In response, Din filed a motion requesting leave to amend the complaint to add the Medical Staff as a defendant. The trial court granted the request.

On March 15, 2022, Din filed his second amended complaint, naming the Hospital and Medical Staff as defendants. The amended complaint alleged that Din worked at the Hospital from 2007 to July 17, 2019. It asserted that, during his employment, Din raised various concerns about patient care issues and complained about the lack of a general surgeon on the MEC. It alleged that Din was asked to resign as a member of the Physician Performance Improvement Committee following a disagreement between him and Hospital Chief of Staff Kurt Shuler and that the MEC initiated an investigation by an ad hoc committee into Din's " 'acts, demeanor and conduct.' " In June 2018, the ad hoc

2

committee asked Din to undergo a fitness-for-duty examination, which occurred in March 2019.

In April 2019, Din filed an employment discrimination complaint against the Hospital and its associated Sutter entities as well as Shuler and the chief of the surgery department. In May 2019, the ad hoc committee closed its investigation.

On July 17, 2019, a different hospital "tentatively selected" Din for a position, and he resigned his employment at the Hospital. On July 18, 2019, Shuler sent Din a letter informing him that, on July 17, 2019, the MEC had summarily suspended his clinical privileges. The letter stated that the suspension was based on a patient care incident occurring on July 17, 2019, as well as "multiple recent adverse peer review findings, reports of several more recent cases involving significant complications and/or unanticipated outcomes, and [Din's] recent refusal to come to the hospital to provide consults requested by Medical Staff colleagues while serving on call." Shuler notified the Medical Board of California and the National Practitioner Data Bank about the suspension of Din's privileges.

Din's complaint alleged that these adverse actions were in retaliation for his advocacy for patients. Specifically, the complaint claimed that the Hospital and Medical Staff retaliated against him by removing him from the Physician Performance Improvement Committee, denying general surgeons a role on the MEC, subjecting him to an investigation by an ad hoc committee of the Medical Staff, requiring him to submit to a fitness-for-duty examination, and summarily suspending his clinical privileges. Based on this asserted wrongdoing, the complaint pleaded four claims: a violation of Health and Safety Code section 1278.5, failure to comply with Business and Professions Code section 2056, and two claims for violations of the public policies embodied in those statutes. Health and Safety Code section 1278.5 is a whistleblower protection law that prohibits retaliation against health care workers who complain to a hospital, medical staff, or governmental entity about suspected unsafe patient care, services, or conditions.

Similarly, Business and Professions Code section 2056 sets forth a state policy that physicians "be encouraged to advocate for medically appropriate health care" for their patients.

Din's complaint alleged that he sustained "substantial economic losses, including past and future compensation and other economic benefits," as well as "mental anguish and pain," entitling him to recover damages. Din also claimed that he did "not have a complete and adequate remedy at law" and was entitled to equitable relief. The prayer for relief sought injunctive relief against the Hospital and Medical Staff, specifically an order retroactively setting aside his suspension and directing the Hospital and Medical Staff to notify the Medical Board of California and the National Practitioner Data Bank of that action. It also asked for a specific finding that the "peer review meeting resulting in" the notifications to the Medical Board and the National Practitioner Data Bank "was conducted in bad faith." And it sought lost compensation, special damages, compensatory damages for emotional distress, punitive damages, costs, and attorneys' fees.

In April 2022, the Medical Staff filed a demurrer to the complaint. In June 2022, the trial court granted the Hospital's motion for summary adjudication as to Din's claims asserting a violation of public policy but denied the motion as to his statutory claims, reasoning that there was a " 'triable issue of material fact as to whether [the Hospital] and the Medical Staff acted jointly in taking retaliatory action against' " Din. On June 8, 2022, the court sustained the Medical Staff's demurrer without leave to amend, concluding that Din's claims against the Medical Staff were barred by the statute of limitations.

The trial court subsequently granted the Hospital's motion to strike Din's jury demand and bifurcated the trial proceedings. The court concluded that the issue "of whether [the] Hospital controlled and was responsible for the actions of [the] Medical Staff" should be considered first. The court also granted a motion to exclude the

4

testimony of Robert Sullivan, Din's expert witness in the area of health care law and practice.

After a bench trial, the trial court issued an oral ruling finding in the Hospital's favor, followed by a written statement of decision.

Din filed a timely notice of appeal.

DISCUSSION

I.

Din contends that the trial court erred in striking his demand for a jury trial. He acknowledges that jury trials are not required for claims under Health and Safety Code section 1278.5 but argues that he had a right to have a jury decide his cause of action under Business and Professions Code section 2056.

"California's constitutional jury trial provision preserves the right to jury trial in civil actions comparable to those *legal* causes of action in which the right to jury trial existed at the time of the first Constitution's adoption in 1850 and does not apply to causes of action that are *equitable* in nature." (*Nationwide Biweekly Administration, Inc. v. Superior Court* (2020) 9 Cal.5th 279, 292-293.) " 'Legal' " causes of action were those "in which the plaintiff sought to recover money damages to compensate for an injury caused, for example, by the defendant's breach of contract or tortious conduct, whereas 'equitable' causes of action (or 'suits in equity') sought relief that was unavailable in actions at law, such as an injunction to prohibit ongoing or future misconduct or an order requiring a defendant to provide specific performance or disgorge ill-gotten gains." (*Id.* at p. 293.)

To determine " ' " 'whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action. A jury trial must be granted where the *gist* of the action is legal, where the action is in reality cognizable at law.' " [Citation.] On the other hand, if the action is essentially one in equity and the

5

relief sought "depends upon the application of equitable doctrines," the parties are not entitled to a jury trial.' " (*Shaw v. Superior Court* (2017) 2 Cal.5th 983, 995.) " '[T]he prayer for relief in a particular case is not conclusive [citations]. Thus, "[t]he fact that damages is one of a full range of possible remedies does not guarantee . . . the right to a jury." ' " (*Ibid.*) We review whether a party was entitled to a jury trial de novo. (*Caira v. Offner* (2005) 126 Cal.App.4th 12, 23.)

In this case, the trial court determined that the "gist" of Din's Business and Professions Code section 2056 claim was equitable because it overlapped substantially with his Health and Safety Code section 1278.5 claim. And although Din's complaint requested damages, its prayer for relief alone was not controlling, and equitable and legal remedies were intertwined throughout the complaint. Accordingly, Din was not entitled to a jury trial on his Business and Professions Code section 2056 claim.

We agree with this conclusion. Both of Din's statutory claims arise from the same set of facts: Din asserts that the Hospital engaged in a series of retaliatory actions culminating in the summary suspension of his clinical privileges on July 17, 2019. This suspension and Din's resignation resulted in reports to the Medical Board of California and the National Practitioner Data Bank, which caused Din harm. The second amended complaint seeks essentially to reverse the summary suspension and reports as well as a specific finding that the meeting resulting in the reports was conducted in bad faith. These remedies are equitable in nature. (*DiPirro v. Bondo Corp.* (2007) 153 Cal.App.4th 150, 181-182 [injunctive and declaratory relief are equitable in nature].) The factual allegations and relief sought thus show that the "gist" of Din's action is equitable. (*Shaw v. Superior Court*, *supra*, 2 Cal.5th at p. 995.)

In addition, Business and Professions Code section 2056 does not specify what forms of relief it anticipates but sets forth a broad mandate to "provide protection against retaliation for physicians who advocate for medically appropriate health care for their patients." To that end, it forbids anyone from terminating, retaliating against, or

otherwise penalizing a physician for such advocacy, or "prohibit[ing], restrict[ing], or in any way discourag[ing] a physician and surgeon from communicating to a patient information in furtherance of medically appropriate health care." (Bus. & Prof. Code, § 2056, subd. (c).) As the trial court observed, the scope of the statute appears to anticipate liability for a wide range of misconduct, which equitable relief would be more appropriate to remedy. (Cf. *Nationwide Biweekly Administration, Inc. v. Superior Court*, *supra*, 9 Cal.5th at p. 327 [concluding California's unfair competition law and false advertising law are equitable in nature based on the "expansive and broadly worded substantive standards that are to be applied" in the statutes].)

Din does not address this conclusion. Nor does he explain how or whether his claim under Business and Professions Code section 2056 is "of like nature or of the same class as any common law right of action." (*Nationwide Biweekly Administration, Inc. v. Superior Court*, *supra*, 9 Cal.5th at p. 322.) His sole argument on appeal is that his cause of action is legal because he requested "damages according to proof," including for lost compensation and related employment benefits, past and future. But it is well established that the fact that one potential remedy is damages does not guarantee the right to a jury trial. (*Shaw v. Superior Court*, *supra*, 2 Cal.5th at p. 995.) We therefore reject Din's claim.

## II.

Din also claims that the trial court erred when it bifurcated the trial to make an initial determination whether the Hospital could be held responsible for the Medical Staff's actions, before addressing other issues.

Under Code of Civil Procedure section 598, a trial court may order, on its own motion, "that the trial of any issue or any part thereof shall precede the trial of any other issue or any part thereof in the case," when "the convenience of witnesses, the ends of justice, or the economy and efficiency of handling the litigation would be promoted thereby." Code of Civil Procedure section 1048, subdivision (b) also generally permits

7

severance "in furtherance of convenience or to avoid prejudice." We will reverse a trial court's bifurcation order only where there is a "manifest abuse of discretion." (*Huff v. Securitas Security Services USA, Inc.* (2018) 23 Cal.App.5th 745, 763; see also *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1271.)

"[I]t is a fundamental principle of appellate procedure that a trial court judgment is ordinarily presumed to be correct and the burden is on an appellant to demonstrate, on the basis of the record presented to the appellate court, that the trial court committed an error that justifies reversal of the judgment." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608-609.) Under California Rules of Court, rule 8.120(b), "If an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court, the record on appeal must include a record of these oral proceedings in the form of one of the following: [¶] (1) A reporter's transcript under rule 8.130; [¶] (2) An agreed statement under rule 8.134; or [¶] (3) A settled statement under rule 8.137." While a record of the oral proceedings "may not be necessary if the appeal involves legal issues requiring de novo review," in many cases involving the substantial evidence or abuse of discretion standard of review, "a reporter's transcript or an agreed or settled statement of the proceedings will be indispens[a]ble." (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476, 483; see also *Wagner v. Wagner* (2008) 162 Cal.App.4th 249, 259 ["The absence of a record concerning what actually occurred at the hearing precludes a determination that the court abused its discretion"].)

In this case, Din did not designate the relevant hearing for inclusion in the reporter's transcript on appeal. As a result, the only evidence in the record of the trial court's bifurcation decision is a minute order, which reads: "Court sets trial for 5/15/23 and 5/16/23 on the issue of whether Sutter Hospital controlled and was responsible for the actions of Sutter Medical Staff. Parties are to meet and confer with regard to order of witnesses in terms of the issue of liability [and] availability of counsel and witnesses." This record is inadequate to show that the trial court manifestly abused its discretion

8

when it determined the trial should be bifurcated. We do not presume a trial court erred, and there are any number of permissible reasons why a trial court may bifurcate a trial. (See Code Civ. Proc., §§ 598, 1048, subdivision (b) [permitting bifurcation for judicial economy, to expedite proceedings, or for witness convenience].) "So long as such possible grounds may exist for the trial court" to exercise its discretion, and in the absence of a record showing evidence to the contrary, we must presume the record supports the trial court's order and reject Din's claim of error. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.)

III.

Din further contends that the trial court erred when it precluded Robert Sullivan, an expert witness in the field of California health care law, from testifying at trial. Din acknowledges that his disclosure that Sullivan's testimony could include the topic of the relationship between the Hospital and the Medical Staff was untimely, but he argues that the trial court had discretion under Code of Civil Procedure section 2034.720 to permit the testimony nonetheless. As with the bifurcation issue, we conclude that Din has not carried his burden to show the trial court abused its discretion.

Under Code of Civil Procedure section 2034.720, a trial court shall allow untimely expert witness information "only if all of the following conditions are satisfied: [¶] (a) The court has taken into account the extent to which the opposing party has relied on the absence of a list of expert witnesses. [¶] (b) The court has determined that any party opposing the motion will not be prejudiced in maintaining that party's action or defense on the merits. [¶] (c) The court has determined that the moving party did all of the following: [¶] (1) Failed to submit the information as the result of mistake, inadvertence, surprise, or excusable neglect. [¶] (2) Sought leave to submit the information promptly after learning of the mistake, inadvertence, surprise, or excusable neglect. [¶] (3) Promptly thereafter served a copy of the proposed expert witness information described in Section 2034.260 on all other parties who have appeared in the action." The

9

moving party must also make the expert available for deposition. (Code Civ. Proc., § 2034.720, subd. (d).)

Code of Civil Procedure section 2034.620 provides similar requirements for a party to augment or amend an existing expert witness list, except that subdivision (c) reads: "The court has determined either of the following:  [¶]  (1) The moving party would not in the exercise of reasonable diligence have determined to call that expert witness or have decided to offer the different or additional testimony of that expert witness.  [¶]  (2) The moving party failed to determine to call that expert witness, or to offer the different or additional testimony of that expert witness as a result of mistake, inadvertence, surprise, or excusable neglect, and the moving party has done both of the following:  [¶]  (A) Sought leave to augment or amend promptly after deciding to call the expert witness or to offer the different or additional testimony.  [¶]  (B) Promptly thereafter served a copy of the proposed expert witness information concerning the expert or the testimony described in Section 2034.260 on all other parties who have appeared in the action."

A trial court's decision to allow untimely expert designations or augmentations is reviewed for abuse of discretion. (*Dickison v. Howen* (1990) 220 Cal.App.3d 1471, 1476; see also *Bonds v. Roy* (1999) 20 Cal.4th 140, 147-149.)  "Under the abuse of discretion standard, '[w]here there is a [legal] basis for the trial court's ruling and it is supported by the evidence, a reviewing court will not substitute its opinion for that of the trial court.' " (*People ex rel. Harris v. Sarpas* (2014) 225 Cal.App.4th 1539, 1552.)

As explained above, the appellant bears " 'the burden of providing an adequate record.  [Citation.]  Failure to provide an adequate record on an issue requires that the issue be resolved against [the appellant].' " (*Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609.)  Thus, "[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively*

*presumed correct* as to *all evidentiary matters*." (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992.)

Din asserts that the new expected testimony by Sullivan would have been relevant to the issues at trial, the failure to disclose the expert in a timely manner was an "excusable mistake," and the Hospital would not have been prejudiced by permitting the expert testimony. The record does not include a reporter's transcript for the April 28, 2023 motion hearing at which the trial court decided to exclude the expert witness, however. As a result, there is no record of any factfinding done by the trial court or explanation of the basis for its ruling. Din has therefore failed to carry his burden of pointing to evidence to suggest that the trial court relied on impermissible factors or that its findings lacked substantial evidence.

The documents that are available in the clerk's transcript likewise do not demonstrate that the trial court abused its discretion. Sullivan was initially disclosed as an expert who would testify about the effects of reports to the Medical Board of California and the National Practitioner Data Bank. He was not offered as an expert in the relationship between medical staff entities and their respective hospitals. The opinions he offered during his deposition were consistent with Din's original, more limited disclosure. The expert discovery cutoff date was September 19, 2022. Din did not notify the Hospital that he intended to call Sullivan as a witness to testify about "whether the Medical Staff's summary suspension of Plaintiff's clinical privileges constituted an action by [the Hospital]" until April 17, 2023, approximately one month before trial, and served a supplemental disclosure on April 24, 2023. At that point, Sullivan's deposition was more than six months old and had not covered the newly proposed subject area. Nor had the Hospital named a rebuttal expert on this issue or made such expert available for deposition. Given these facts, we see no basis on which to conclude that the trial court improperly exercised its discretion when it did not permit Din

11

to inject new expert testimony into the case weeks before trial. (See *Cottini v. Enloe Medical Center* (2014) 226 Cal.App.4th 401, 421-422.)

IV.

Din also contends that the trial court was incorrect when it found after trial that the Hospital was not liable for the allegedly retaliatory actions taken by the Medical Staff. He asserts that the Hospital controlled the Medical Staff and that the Hospital could therefore be held legally responsible for the Medical Staff's decision to summarily suspend his clinical privileges. We reject this claim because the trial court's contrary conclusion is supported by substantial evidence.

A.

After a trial, the trial court explained its decision in an oral ruling, followed by a written statement of decision. In the statement of decision, the court recognized that Din had conceded that the Hospital itself had not taken any of the acts of retaliation alleged in his complaint. As a result, "the only potential path to liability against [the Hospital] was for [Din] to prove by a preponderance of the evidence that [the Hospital] somehow controlled or directed the alleged acts of retaliation taken by the Medical Staff." After considering the trial evidence, the court concluded that Din had failed to prove such control or direction. Rather, the evidence showed that "all of the acts of retaliation alleged by Plaintiff in the operative complaint were taken by the Medical Staff through its committees and leaders, with no direction or control" by the Hospital. The "summary suspension was indisputably an act taken by the Medical Staff alone, by unanimous vote of the MEC, which is the Medical Staff's governing body." The evidence showed that the "MEC's decision to summarily suspend [Din's] clinical privileges was authorized by the [Medical Staff] Bylaws, and did not require any action or input from the Hospital's leadership, or its Board of Directors." Credible testimony also showed that the Hospital was not involved in removing Din from the Physician Performance Improvement Committee, denying general surgeons a role on the MEC, or subjecting Din to

12

investigations or a fitness-for-duty examination. And the evidence did not establish that the Hospital had a "general duty of oversight" that required it "to intervene or interfere with the Medical Staff's actions with respect to [Din]." The trial court therefore found in favor of the Hospital and against Din.

B.

"The statement of decision provides the trial court's reasoning on disputed issues and is our touchstone to determine whether or not the trial court's decision is supported by the facts and the law." (*Slavin v. Borinstein* (1994) 25 Cal.App.4th 713, 718.) "In reviewing a judgment based upon a statement of decision following a bench trial, we review questions of law de novo. [Citation.] We apply a substantial evidence standard of review to the trial court's findings of fact. [Citation.] Under this deferential standard of review, findings of fact are liberally construed to support the judgment and we consider the evidence in the light most favorable to the prevailing party, drawing all reasonable inferences in support of the findings." (*Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 981.) "In this review we cannot ' "reweigh evidence or reassess the credibility of witnesses." ' " (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 38.)

In *Bichai v. Dignity Health* (2021) 61 Cal.App.5th 869, 872, the appellate court determined that a recommendation by a hospital's medical staff entity could not be imputed to the hospital itself. In that case, the plaintiff, a physician, applied for medical staff membership at the defendant hospital and was told he would be granted clinical privileges with some conditions. (*Id.* at pp. 872-873.) After a dispute regarding patient care, the medical staff's executive committee recommended denial of the plaintiff's application. (*Id.* at p. 874.) The plaintiff sued the hospital, asserting retaliation under Business and Professions Code section 2056 and Health and Safety Code section 1278.5, among other claims. (*Bichai*, at p. 875.) The defendant hospital filed a demurrer, arguing it was a separate entity from the medical staff. (*Ibid.*) The trial court sustained the

13

demurrer, and the Court of Appeal affirmed. (*Id.* at pp. 876, 882.) The Court of Appeal explained that a hospital and its medical staff are distinct legal entities. (*Id.* at pp. 872, 880.) The medical staff's recommendation to deny the plaintiff's application was therefore "not an act of wrongdoing by the hospital." (*Id.* at p. 872.) And because the hospital itself had not taken any action against the plaintiff at that point, no claim had accrued against the hospital. (*Id.* at p. 880.)

Here, the trial court concluded that the factual circumstances in this case were like those in *Bichai* because only the Medical Staff acted in each of the alleged retaliatory actions. These findings are supported by substantial evidence. Rachael McKinney, the Hospital's former CEO, testified that she was only a nonvoting member on the MEC and played no role in any of the allegedly retaliatory actions against Din, including the eventual suspension of his clinical privileges. Nor did the MEC need her approval or the approval of the Hospital's Board of Directors to take that action. Other witnesses, including senior members of the Medical Staff, corroborated McKinney's testimony, stating that neither the Hospital's Board of Directors nor the Hospital's administration more broadly directed the MEC's actions as to Din. The only contrary evidence, Din's testimony that the Hospital's CEO "sometimes . . . had input" in peer review committee meetings, did not discuss the specific actions about which Din complains, and the trial court was entitled to determine which evidence carried the most weight.

We also disagree with Din's current argument that *Bichai* is factually distinguishable because Din resigned, making the Medical Staff's action final, rather than merely recommended, as in *Bichai*. The relevant point is that the alleged retaliatory actions—the recommendation in *Bichai* and the summary suspension here—were taken by the medical staff, a distinct legal entity, without involvement by the respective hospitals. (*Bichai v. Dignity Health*, *supra*, 61 Cal.App.5th at p. 880.)

We similarly reject Din's analogy to *Elam v. College Park Hospital* (1982) 132 Cal.App.3d 332. In that case, the Court of Appeal held that a hospital owes a duty to

14

"insure the competency of its medical staff and to evaluate the quality of medical treatment rendered on its premises" and thus could be held liable for a surgery patient's injury under a corporate negligence theory. (*Id.* at p. 347; see *id.* at pp. 336, 346-347.) That decision did not address the different question of a hospital's duties with respect to, or involvement in, alleged retaliatory acts against providers who work at the hospital.

Din additionally argues that the Hospital exercised control over the Medical Staff because the Hospital's bylaws and two regulations (Cal. Code Regs., tit. 22, §§ 70701 & 70703) provide that the Hospital has oversight responsibilities as to the Medical Staff. As the trial court noted, however, the specific portions of the bylaws that relate to the summary suspension of clinical privileges do not appear to anticipate Hospital involvement, except in extenuating circumstances or if the physician appeals the suspension. It was within the trial court's discretion to give greater weight to the specific bylaw provisions addressing the summary suspension of clinical privileges than to the more general bylaw provisions on which Din relies. Din, moreover, does not point to any legal authority supporting his argument that general oversight authority as conveyed in either the Hospital's bylaws or the California Code of Regulations implies liability absent Hospital involvement in the specific decisions being challenged.

Finally, Din's argument that the Medical Staff acted as a "cat's paw" of the Hospital suffers from the same defects as his other arguments, because that principle still requires the Hospital to have had a role in the retaliatory actions. (See *Reeves v. Safeway Stores, Inc.* (2004) 121 Cal.App.4th 95, 113 ["If a supervisor makes another his tool for carrying out a discriminatory action, the original actor's purpose will be imputed to the tool, or through the tool to their common employer"].) The trial court concluded that the Hospital had no such role, and, as explained above, that conclusion was supported by substantial evidence. Din's challenge to the trial court's ruling therefore fails.

## V.

Last, Din asserts that the trial court erred when it sustained the demurrer as to the Medical Staff.

## A.

As a threshold matter, the Hospital contends that this court lacks jurisdiction to consider the issue because Din should have appealed the trial court's ruling when the demurrer was first sustained, making his current appeal untimely. We disagree.

In general, " ' "an appeal may be taken only from the final judgment in an entire action." ' " (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 756.) An "order sustaining a demurrer without leave to amend is not appealable, but a party may appeal from the entry of dismissal after such order." (*Bullock v. City of Antioch* (2022) 78 Cal.App.5th 407, 411, fn. 1.) An " 'appellate court may deem an order sustaining a demurrer to incorporate a judgment of dismissal,' " particularly where "the absence of a final judgment results from inadvertence or mistake." (*Zipperer v. County of Santa Clara* (2005) 133 Cal.App.4th 1013, 1019.)

Here, the trial court sustained the demurrer as to the claims against the Medical Staff, but its order does not include dismissal of the Medical Staff as a defendant, and the record does not contain an entry of judgment in the Medical Staff's favor. Nor, as in *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880, upon which the Hospital relies, did the trial court issue a separate judgment for the Medical Staff under Code of Civil Procedure section 579. And we see no reason, such as a mistake by the trial court, to deem the demurrer ruling to incorporate a dismissal of the Medical Staff, particularly where doing so would defeat, rather than vindicate, a party's right to obtain appellate review of the trial court's ruling. Din appealed from a final judgment, and that appeal necessarily includes all pre-judgment rulings. (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 128 ["On appeal from a superior court judgment, 'the reviewing court may review . . . any intermediate ruling, proceeding, order or decision which involves the

merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party' "].) We therefore conclude we have jurisdiction to consider the appeal and proceed to the merits.

B.

As explained above, Din's complaint alleged that he was subject to various retaliatory actions for his patient advocacy, culminating in the summary suspension of his clinical privileges on July 17, 2019. Din first filed claims against the Medical Staff nearly three years later, on March 15, 2022.

The trial court ruled that Din's causes of action against the Medical Staff were untimely. The court reasoned that Din's claim under Health and Safety Code section 1278.5 was subject to the one-year limitations period in Code of Civil Procedure section 340, subdivision (a), which applies to actions "upon a statute for a penalty or forfeiture." The court held that Din's claim under Business and Professions Code section 2056 was subject to a two-year statute of limitations. The court also rejected Din's reliance on the doctrine of equitable estoppel, finding that "it cannot be said that the defendant intentionally misled the plaintiff on the identity of the Medical Staff as a responsible party." It reasoned that Din "should have understood the independent role" of the Medical Staff and therefore should not have been misled as to the proper defendant.

A trial court's "order sustaining a demurrer on statute of limitations grounds is subject to de novo review on appeal. [Citation.] The untimeliness of the lawsuit must clearly and affirmatively appear on the face of the complaint and matters judicially noticed before an appellate court will affirm an order sustaining the demurrer." (*Cavey v. Tualla* (2021) 69 Cal.App.5th 310, 326.) " 'The determination of whether a defendant's conduct is sufficient to invoke [equitable estoppel] is a factual question entrusted to the trial court's discretion,' " and we review it for substantial evidence. (*Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 756.)

17

## C.

Din maintains that the three-year limitations period under Code of Civil Procedure section 338, subdivision (a) applies to both of his claims. That provision gives plaintiffs three years to file "[a]n action upon a liability created by statute, other than a penalty or forfeiture." (*Ibid.*) We disagree.

First, Health and Safety Code section 1278.5 is a statute providing for "a penalty or forfeiture." (Code Civ. Proc., § 338, subd. (a).) Health and Safety Code section 1278.5, subdivision (b)(3) states that any violation "shall be subject to a civil penalty of not more than twenty-five thousand dollars." That penalty is mandatory, as evidenced by the Legislature's use of the word "shall." (*Ibid.*; see *Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 978 ["civil penalty is mandatory" where statute provides violators "shall be liable for a civil penalty"].) Where a civil penalty is mandatory, the one-year limitations period in Code of Civil Procedure section 340, subdivision (a), and not the longer three-year period under section 338, subdivision (a), applies. (*The TJX Companies, Inc. v. Superior Court* (2008) 163 Cal.App.4th 80, 84-85; *Shamsian*, at pp. 977-978.) Din emphasizes that his complaint did not request civil penalties, but " '[t]he statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded.' " (*Davies v. Krasna* (1975) 14 Cal.3d 502, 515.)

Business and Professions Code section 2056 does not similarly prescribe a mandatory penalty, but to fall within Code of Civil Procedure section 338, as Din urges, the claim must be "upon a liability created by statute," which means that " ' "the liability is embodied in a statutory provision *and* was of a type which did not exist at common law." ' " (*Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1320.) "Thus, where a cause of action is based upon a statute which did not 'create a new form of liability . . . but merely codified and refined existing law,' the [Code of Civil Procedure] section 338 three-year limitations period for actions based upon statutory

18

liability does not apply." (*West Shield Investigations & Security Consultants v. Superior Court* (2000) 82 Cal.App.4th 935, 952; compare *Aubry v. Goldhor* (1988) 201 Cal.App.3d 399, 404 [action to recover overtime pay created by statute because common law presumed overtime was "volunteer[ed]" by employee] with *Jackson*, at p. 1321 [Lanterman-Petris-Short Act claim not created by statute because "the essence of the complaint is still unlawful detention," which was recognized at common law].)

Din does not advance any argument that Business and Professions Code section 2056 created a new form of liability of a type that did not exist at common law. As a result, he fails to show that the trial court's contrary conclusion was in error, and his claim is forfeited. (*Brinsmead v. Elk Grove Unified School Dist.* (2023) 95 Cal.App.5th 583, 587 ["plaintiffs bear the burden of proving the trial court erred in sustaining the demurrer"]; *Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara* (2024) 102 Cal.App.5th 1303, 1308, fn. 5 ["If an argument is not made on a particular point, we may treat it as forfeited"].)

Citing to *Minor v. FedEx Office & Print Servs.* (N.D.Cal. 2016) 182 F.Supp.3d 966, Din argues we should apply the three-year statute of limitations used for claims under Labor Code section 1102.5, which concerns employer whistleblower retaliation. Din does not demonstrate that the statute of limitations for a Labor Code section 1102.5 claim is actually three years, nor does he explain why the limitations period for that statute should govern the different statutes at issue here. (See *Minor v. FedEx Office & Print Servs.*, *supra*, at pp. 988-989 [discussing different types of claims under Labor Code section 1102.5 and different applicable statutes of limitation]; *Ayala v. Frito Lay, Inc.* (E.D.Cal. 2017) 263 F.Supp.3d 891, 916-917 [same]; *De Picciotto v. Seneca Healthcare Dist.* (E.D.Cal. Aug. 2, 2021, No. 2:19-CV-01297-TLN-DMC) 2021 U.S.Dist. Lexis 144020, p. *12 [rejecting comparison of Labor Code section 1102.5 to Health and Safety Code section 1278.5 based on statutory structural differences].) We thus conclude that Din has not demonstrated the trial court erred when it concluded that his Health and

Safety Code section 1278.5 claim was subject to a one-year statute of limitations and his Business and Professions Code section 2056 claim was subject to a two-year statute of limitations. (See Code Civ. Proc., §§ 339, 340, subd. (a).)

D.

We also reject Din's invocation of the doctrine of equitable estoppel. Equitable estoppel requires "that the plaintiff exercise reasonable diligence." (*Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 936.) Thus, the plaintiff must have been "ignorant of the true state of the facts," of which the defendant was aware, and the defendant must have intended to mislead the plaintiff. (*California Cigarette Concessions, Inc. v. City of Los Angeles* (1960) 53 Cal.2d 865, 869.)

Here, substantial evidence supports the trial court's refusal to apply equitable estoppel to preclude the assertion of a statute of limitations defense, because the record supports the conclusion that Din failed to exercise reasonable diligence, that he was not, or should not have been, ignorant of the facts, and that the Hospital did not intentionally mislead him. According to the complaint, Din had multiple interactions with the Medical Staff over the course of his employment, including an attempt to win election to the Chief of Staff position at the Hospital. He alleged that the MEC, the governing body of the Medical Staff, was the party that suspended his clinical privileges. These allegations support the trial court's conclusion that, as a member of the Medical Staff, Din "should have understood the independent role it played in reviewing a doctor's privileges."

Given his background, the documents Din cites in his opening brief as evidence of intent to mislead him should not have misled him; nor do they demonstrate that the Hospital intended to deceive him. The Hospital's form interrogatory response draws a clear distinction between the Hospital and the Medical Staff, saying, for instance, that "Sutter Davis has found no evidence that Plaintiff made any reports about patient safety issues to its administration or Medical Staff." While the case management statements do say that "Sutter Davis [Hospital] . . . summarily suspend[ed] Plaintiff's clinical

20

privileges," they also distinguish the Hospital from the Medical Staff, stating that Din "resigned from the Medical Staff of Defendant Sutter Davis Hospital" but "alleges the hospital took various actions against him." The trial court was entitled to weigh these statements considering the full record of proceedings, and nothing in these documents persuades us that the court's determination lacked substantial evidence.

Finally, to the extent Din is arguing the discovery rule applies based on his late discovery that the Medical Staff was the proper defendant, we disagree. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397.) It does not apply where a plaintiff simply lacks knowledge of the proper defendant's identity. (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 807.)[1]

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)

/s/
FEINBERG, J.

We concur:

/s/
DUARTE, Acting P. J.

/s/
MESIWALA, J.

---

[1] After the case was fully briefed, Din filed a request for judicial notice of a privilege log that was filed in a separate case before the trial court. Because Din's request seeks judicial notice of the truth of the contents of the privilege log and his interpretation of them, the request is denied. (*StorMedia Inc. v. Superior Court* (1999) 20 Cal.4th 449, 456, fn. 9; *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 483.)

21